UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LEROY DENEKE,<br><br>               Plaintiff,<br><br><br>     vs.<br><br><br><br>MENARD, INC.,<br><br>               Defendant. | 5:21-CV-05068-LLP<br><br>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL AND FOR PROTECTIVE ORDER<br><br>[Docket No. 7]<br><br>AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS MOTION FOR PROTECTIVE ORDER, TO COMPEL, AND TO QUASH RULE 30(b)(6) NOTICE<br><br>[Docket No. 15] |

## INTRODUCTION

This matter is pending before the court on plaintiff LeRoy Deneke's motion to compel defendant's corporate designee deposition under Federal Rule of Civil Procedure 30(b)(6), for production of documents, sanctions, and a protective order prohibiting the plaintiff's deposition until after defendant's Rule 30(b)(6) deposition. Docket No. 7. Defendant Menard, Inc., ("Menards") has filed a cross motion for a protective order, to compel Mr. Deneke to provide discovery responses, and to quash the Rule 30(b)(6) deposition notice. Docket No. 15. This matter has been referred to this magistrate judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A) and the August 11, 2021,

standing order of the Honorable Lawrence L. Piersol, United States District Judge.  Docket No. 21.

## FACTS

The parties' dispute concerns an injury suffered by Mr. Deneke on September 27, 2018, at the Menards in Rapid City, South Dakota.  Docket No. 1-1.  That day, Mr. Deneke picked up one hundred thirty-three-pound concrete blocks he had purchased the day before.  Docket No. 1-1 at p. 1; Docket No. 10-3; Docket No. 20-1.[1]  According to the plaintiff's complaint, Mr. Deneke was directed to a yard where the blocks would be loaded into his pickup.  Docket No. 1-1 at p. 1.  Mr. Deneke alleges that a Menards employee began using a forklift to load the blocks into the pickup.  Id.  Mr. Deneke, for reasons disputed by the parties, participated in loading the blocks into his pickup.  While loading the concrete blocks, Mr. Deneke caught his heel on a wooden pallet lying on the ground.  Docket No. 10-3.  He fell backwards and struck his head, resulting in a cut to the back of his head.  Id.

Mr. Deneke initiated a cause of action in state court in September 2021. The complaint alleged negligence sounding primarily in premises liability. Docket No. 1-1.  Menards removed the action to the United States District Court for the District of South Dakota based on the diverse citizenship of the parties and the amount in controversy.  Docket No. 1.

---

[1] The record is ambiguous as to whether Mr. Deneke purchased and picked up the blocks on September 27 (Docket No. 1-1 at p. 1) or if he purchased the blocks on the 26th and picked them up on the 27th (Docket Nos. 20-1 & 10-3).

On November 16, 2021, plaintiff's counsel served on defense counsel a proposed notice of Rule 30(b)(6) deposition.  Docket No. 10-1.  Included in the proposed notice were 19 matters of examination (several with subparts), seven subjects of examination regarding electronically stored information ("ESI"), and 16 requests for documents to be produced one hour before the deposition.  Id. at pp. 2-8.  Plaintiff's counsel asked defense counsel to identify Menards' corporate designee and to provide potential dates for the deposition.  Id. at p. 1.

Plaintiff's counsel followed up on January 7, 2022.  Docket No. 10-2.  Counsel asked defendant to provide dates convenient for the Rule 30(b)(6) deposition so he could serve a final notice with the agreed date, time, and location.  Id.  Plaintiff's counsel also asked the defense to advise "if we need to confer about the matters of examination."  Id.

Defense counsel responded the following week and advised plaintiff's counsel that they thought they had the corporate representative selected, but that they may need to discuss narrowing the matters of examination pending further input from the defendant.  Docket No. 10-5.  Defense counsel asked plaintiff's counsel to suggest some dates in February for the Rule 30(b)(6) deposition.  Id.

After Mr. Deneke's counsel did not respond, defense counsel followed up in early February.  Docket No. 18-1.  Dates were suggested, and the parties agreed that the Rule 30(b)(6) deposition would take place on February 23.  Docket No. 9 at p. 3.  The next day, plaintiff's counsel served a final notice of Rule 30(b)(6) deposition.  Docket No. 10-6.  It contained the same matters of

examination, including those regarding ESI, and document requests as the proposed notice.  Id. at pp. 1-7.

A few days later, Menards served on plaintiff its first set of discovery requests.  Plaintiff's counsel wrote defendant's counsel to advise that Mr. Deneke was in Arizona and would not return until late March.  Docket No. 10-7.  Plaintiff's counsel asked for an extension of time to respond until May 1.  Id.

On February 10, plaintiff's counsel served an amended notice of Rule 30(b)(6) deposition.  Docket No. 10-8.  The amended notice corrected internal inconsistencies in the original notice related to the date of injury.  Docket No. 9 at p. 4.  It also added a twentieth matter of examination.  Docket No. 10-8 at p. 4.

Defense counsel sent a letter the following week expressing concerns about the scope of the matters of examination contained in the amended Rule 30(b)(6) deposition notice.  Docket No. 10-9.  Defense counsel suggested meeting and conferring about the overbreadth issues and delaying the deposition until the second week of March to allow the corporate designee more time to prepare and to secure a protective order to cover sensitive information. Id. at p. 1.  And defense counsel provided detailed responses to eleven matters of examination which she thought were overbroad.  Id. at pp. 2-7.  She indicated Menards' representative would be prepared to testify about the matters concerning ESI and expressed concerns about the scope of six document requests.  Id. at pp. 8-9.

4

The next day, plaintiff's counsel responded to defense counsel's letter and served a second amended notice of Rule 30(b)(6) deposition.  Docket Nos. 10-10 & 10-11.  Plaintiff's counsel indicated he had narrowed the scope of several matters of examination and document requests.  Docket No. 10-11 at p. 1.  Plaintiff's counsel explained how each modification affected the matters of examination and how each modification addressed defendant's concerns.  Id. at pp. 1-5.  Plaintiff indicated he was amenable to delaying the deposition until mid-March to give the defendant sufficient time to prepare its representative.  Id. at p. 5.

The parties agreed to delay the deposition until March 15, and plaintiff's counsel served a third amended notice of Rule 30(b)(6) deposition reflecting the new date.  Docket No. 10-12.

Defense counsel wrote plaintiff's counsel on February 25 to address continued issues with the scope of areas of examination and schedules of documents ("SOD") contained in the third amended notice.  Docket No. 10-13.  She identified five matters of examination which were still, she argued, overbroad and indicated that her client would require a protective order prior to disclosing certain sensitive information.  Id. at p. 1-2.  Defense counsel further stated that the information about ESI requested in the notice was not relevant because there had been no allegation of spoliation, and Menards' representative would not be producing information related to those topics without a court order.  Id. at p. 2.  She further objected to twelve of the SODs.  Id. at pp. 2-3.  Counsel stated that, if Mr. Deneke did not acquiesce to her

client's position, she would file a motion for a protective order and a motion to quash the Rule 30(b)(6) notice. Id. at p. 3. She further stated her intent to depose Mr. Deneke before March 11 and requested plaintiff's answers to the first set of discovery requests in advance of his deposition and the Rule 30(b)(6) deposition. Id. She wrote, "my client is entitled to receive the information it has requested so as to adequately prepare its investigation and defense of this matter." Id.

The same day, plaintiff's counsel wrote back. Docket No. 10-14. He noted that this was the first time defense counsel had expressed the desire to depose Mr. Deneke, let alone before the Rule 30(b)(6) deposition. Id. at p. 1. Plaintiff's counsel explained that he could not accommodate Mr. Deneke's deposition by March 11 and that Mr. Deneke, who was 91 years old at the time, wintered in Arizona and had difficulty travelling. Id. Plaintiff's counsel offered any day in the latter half of April for Mr. Deneke's deposition and stated they would "make every effort" to serve discovery responses ahead of the deposition. Id. at p. 2.

Defense counsel responded the next week. Docket No. 10-15. She indicated that the defendant still planned to file a motion to quash, and she suggested a conference call with plaintiff's counsel to discuss the scope of the Rule 30(b)(6) deposition and discovery in this case generally. Id. The attorneys had a conference call on March 7. Docket No. 9 at p. 7. In the call, plaintiff's counsel proposed a bifurcated Rule 30(b)(6) deposition where the corporate designee would be examined on those matters which were not subject to

6

objections on a date in April, then plaintiff would serve his discovery answers and sit for his deposition.  Id.  Thereafter, if the plaintiff wished, the disputed Rule 30(b)(6) matters could be considered anew, and the defendant could move for a protective order.  Id.

Defense counsel wrote plaintiff's counsel a letter two days later.  Docket No. 10-16.  She said she had discussed with her client the possibility of bifurcating the Rule 30(b)(6) deposition, and the defendant did not wish to do so.  Id.  Defense counsel wrote that the corporate designee would not participate in the deposition because they were unable to prepare without Mr. Deneke's deposition and discovery responses.  Id.

On March 15, the attorneys convened at defense counsel's office at the time set for the Rule 30(b)(6) hearing.  Docket No. 12-1.  No corporate representative appeared, and none of the documents requested in the SODs were provided.  Id. at pp. 4-5.  The attorneys made a record that they had in good faith met and conferred about the issues with the Rule 30(b)(6) notice, but that they remained at loggerheads.  Defense counsel put on the record that Menards was unable to prepare a corporate designee without first deposing plaintiff and receiving discovery responses.  Id. at p. 7.

The same day, plaintiff made the instant motion to compel.  Docket No. 7.  In his motion, plaintiff asks for an order compelling the defendant to sit for its Rule 30(b)(6) deposition, respond to document requests, for an order of sanctions for failing to appear for a properly noticed deposition, and for a

protective order forestalling plaintiff's deposition until after the defendant's

Rule 30(b)(6) deposition is completed.  Id.

Menards has made a cross-motion for a protective order, to compel

Mr. Deneke's discovery responses, and to quash the Rule 30(b)(6) notice.

Docket No. 15.

## DISCUSSION

### A.    Standards Governing Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery

in civil cases pending in federal court:

> *Scope in General.*  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

See Fed. R. Civ. P. 26(b)(1).

If a party fails to respond to a proper request for discovery, or if an

evasive or incomplete response is made, the party requesting the discovery is

entitled to move for an order compelling disclosure after making a good-faith

effort to resolve the dispute by conferring first with the other party.  See Fed. R.

Civ. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad.  See 8

Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2007 (3d ed.

Oct. 2020 update).  The reason for the broad scope of discovery is that

"[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  Id. (quoting Hickman v. Taylor, 329 U.S. 495, 507-08 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c).  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  But these considerations are not inherent barriers to discovery.

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery.  See FED. R. CIV. P. 26(b)(1).  Additionally, the court may limit the frequency and extent of discovery.  See FED. R. CIV. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Mr. Deneke was under a duty to meet and confer with Menards before filing this motion to attempt to resolve the parties' discovery disputes. Similarly, Menards had a duty to attempt to reach agreement on the parties'

9

disputes before filing its cross motion for a protective order and to compel. The parties agreed that they met and conferred when they made a record at the appointed time of the Rule 30(b)(6) deposition, Docket No. 12-1 at pp. 5, 7, and both parties have submitted statements attesting to their efforts to reach agreement on their disputes, Docket Nos. 11 & 18. Accordingly, the motions are ripe for decision.

## B.    Mr. Deneke's Motion for a Protective Order

Much of the gulf between the parties' positions concerns the timing of discovery. Menards wishes to delay its Rule 30(b)(6) deposition until after Mr. Deneke is deposed and it receives his discovery responses. Mr. Deneke wishes to compel the Rule 30(b)(6) deposition as noticed without first sitting for his deposition, and he has moved for a protective order prohibiting Menards from taking his deposition until after its corporate representative is deposed. Docket No. 7.

It is well settled that, after the discovery conference, discovery may generally proceed in any order. See FED. R. CIV. P. 26(d)(3) ("Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice: (A) methods of discovery may be used in any sequence; and (B) discovery by one party does not require any other party to delay its discovery."). "Rule 26(d)(3) makes clear that there is no limitation on the sequence of discovery and that a party cannot delay responding to discovery simply because the other party has not yet responded to its discovery." Liguria Foods, Inc. v. Griffith Labs., Inc., 320 F.R.D. 168, 183

(N.D. Iowa 2017).  "If the opposing party is recalcitrant in responding to discovery requests, the rules provide a mechanism for compelling responses and/or imposing sanctions.  The rules do not authorize one party to withhold discoverable material in retaliation for the opposing party's withholding of discoverable material."  Lumbermens Mut. Cas. Ins. Co. v. Maffei, No. 3:03-cv-262 JWS, 2006 WL 2709835, *5 n.21 (D. Alaska Sept. 20, 2006).

On the other hand, it is not the case that Mr. Deneke's lawyers must take Menards' Rule 30(b)(6) deposition simply because they noticed it first.  See Blackmon v. Bracken Constr. Co., Inc., Civil Action No. 18-142-BAJ-SDJ, 2020 WL 6065520, at *3 (M.D. La. Oct. 14, 2020) (citing FED. R. CIV. P. 26(d) Advisory Committee Note) (noting the "priority rule developed by some courts, which confers priority on the party who first serves notice of taking a deposition, is unsatisfactory in several important respects"); see also Meisenheimer v. DAC Vision, Inc., No. 3:19-cv-1422-M, 2019 WL 6619198, at *3 (N.D. Tex. Dec. 4, 2019) (refusing invitation to follow the "non-existent he-who-serves-the-first-notice-can-dictate-the-order-of-depositions . . . rule[]"); Renlund v. Radio Sys. Corp., Nos. 21-cv-720 (DWF/HB), 21-cv-722 (DWF/HB); 2021 WL 6881287, at *6 (D. Minn. July 6, 2021) ("[T]he mere fact that Plaintiffs [noticed] the depositions of Defendant's employees first does not, in and of itself, accord 'priority' in the sequencing of those depositions.").  Standing alone, the fact that Mr. Deneke noticed the Rule 30(b)(6) deposition first does not entitle him to depose Menards' corporate designee first.

11

Rule 26(d)(3) provides that courts may enter orders concerning the sequence of discovery "for the parties' and witnesses' convenience and in the interests of justice." FED. R. CIV. P. 26(d)(3).  However, "courts do not regularly issue orders altering the sequence of depositions unless a specific reason justifies taking one party's deposition before other depositions commence." Blackmon, 2020 WL 6065520, at *3.

Thus, the court considers whether the parties have shown specific reasons why Mr. Deneke's and the corporate designee's depositions should proceed in a particular sequence.  This is a straightforward slip-and-fall case.  There is little ambiguity about when and where the injury occurred, what the injury was, and the mechanism of injury—Mr. Deneke fell and cut his head in a loading area at the Rapid City Menards on September 27, 2018, at around 11:45 a.m. after tripping backwards over a pallet.  In terms of liability, the primary question is whether Mr. Deneke's injury stemmed from Menards' failure to make its premises safe for business guests.  That said, Mr. Deneke's deposition will illuminate his theory of the case and will clarify the matters of examination to be asked in the Rule 30(b)(6) deposition.

Additionally, the record demonstrates that the plaintiff's primary motivation for seeking a protective order prohibiting the plaintiff's deposition until after the Rule 30(b)(6) deposition was because Mr. Deneke is in his nineties, he was wintering in Arizona, and unexpected travel back to Rapid City for his deposition would be hard for him.  But that was March, and now it is June.  Presumably, Mr. Deneke is back in Rapid City.  The barrier to

12

Mr. Deneke's deposition having been removed by the passage of time, the court
denies Mr. Deneke's motion for a protective order prohibiting Menards from
taking Mr. Deneke's deposition until after the corporate designee's deposition is
taken. Indeed, the interests of justice require the taking of Mr. Deneke's
deposition first. He is a nonagenarian, so the sooner Menards takes his
deposition the better. And, assuming Mr. Deneke intends to winter in Arizona
this year, taking advantage of his limited residency in Rapid City is a
compelling reason for requiring his deposition to go first. Thus, although the
custom that plaintiffs give deposition testimony first is not determinative of this
issue, see Meisenheimer, 2019 WL 6619198, at *4, the court finds good cause
to order Mr. Deneke's deposition to go before Menards' representative's
deposition under Rule 26(d)(3).

## C.   Mr. Deneke's Motion for Sanctions

Mr. Deneke has made a motion for sanctions to punish Menards for
failing to appear at the properly noticed Rule 30(b)(6) deposition. Under
Rule 37(d)(1)(A)(i), "[t]he court where the action is pending may, on motion,
order sanctions if a party or a party's officer, director, or managing agent—or a
person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with
proper notice, to appear for that person's deposition." It is clear that, by not
appearing for the noticed Rule 30(b)(6) deposition, Menards' designee exposed
Menards to sanctions. And it is not a cognizable defense to sanctions that
Menards had, through counsel, objected to some of the areas of examination
contained in the Rule 30(b)(6) notice; to excuse the missed deposition, Menards

13

needed to have filed a motion for protective order.  See FED. R. CIV. P. 37(d)(2)
("A failure described in Rule 37(d)(1)(A) is not excused on the ground that the
discovery sought was objectionable, unless the party failing to act has a
pending motion for a protective order under Rule 26(c).").

"In deciding whether to grant sanctions and the type of sanctions, the
court considers (1) the severity of the violation, (2) the legitimacy of the party's
excuse for failing to comply, (3) whether the violations have been repeated,
(4) the deliberateness of the misconduct, (5) and mitigating excuses,
(6) prejudice to the plaintiff and to the operations of the court, and (7) the
adequacy of lesser sanctions." Atmosphere Hosp. Mgmt., LLC v. Curtullo,
No. 5:13-CV-05040-KES, 2015 WL 136120, at *20 (D.S.D. Jan. 9, 2015)
(citation omitted).

Here, Menards unilaterally cancelled the Rule 30(b)(6) deposition six days
before its scheduled date.  Defense counsel wrote plaintiff's counsel on March 9
to advise them that Menards' "corporate designee w[ould] not be able to
participate in the deposition" without Mr. Deneke's discovery responses and
without first taking his deposition.  Docket No. 10-16.  While Menards'
intention to miss the deposition came late, it was no surprise to Mr. Deneke or
his counsel that Menards had objections to certain matters of examination and
document requests contained in the Rule 30(b)(6) notice.  Defense counsel first
voiced concerns about the overbreadth of several matters of examination on
January 13.  Docket No. 10-5.  Defense counsel made detailed objections about
certain matters of examination on February 15.  Docket No. 10-9.  The parties

continued to meet and confer about Menards' objections until March 9, when defense counsel indicated Menards would not produce its representative on March 15.

Menards met and conferred with Mr. Deneke's counsel about discovery issues, and the record demonstrates the parties tried in good faith to resolve the issues, as is required by D.S.D. L.R. 37.1.  To impose punitive sanctions on Menards—after they made good-faith efforts to resolve the disputes without involving the court—would be antithetical to the court's desire to encourage parties to reach agreement in discovery issues short of court intervention and the expedient resolution of cases in federal court.  Therefore, the court will not impose punitive sanctions on Menards for missing the properly noticed Rule 30(b)(6) deposition.  But the court orders Menards to pay costs (but not attorneys' fees) related to the missed March 15 deposition.  Plaintiff is directed to file a statement of costs it incurred related to the March 15 deposition within 28 days of the date of this order.  Menards may, within 14 days of Mr. Deneke's statement of costs, controvert any factual matters contained therein by counter affidavit.

## D. Defendant's Motion to Compel Discovery Responses

Menards has moved for an order compelling Mr. Deneke to respond to its discovery requests.  Plaintiff has represented that he served his responses to interrogatories on or before April 29, 2022.  Docket No. 20 at p. 22.  Accordingly, Menards' motion to compel Mr. Deneke's responses to written

discovery is denied without prejudice.  Menards may file a new Rule 37 motion
to compel if it deems those answers are still owing or are otherwise inadequate.

**E.    Menards' Motion for a Protective Order Limiting the Scope of the
Rule 30(b)(6) Notice**

Lastly, Menards has moved for a protective order limiting the scope of
four matters of examination ("MOE"), the ESI subjects, and five SODs.  Filing a
pre-deposition motion for a protective order is the proper method for
challenging the relevance of matters of examination contained in a Rule
30(b)(6) notice.  See New England Carpenters Health Benefits Fund v. First
DataBank, Inc., 242 F.R.D. 164, 166 (D. Mass. 2007); Ecclesiastes 9:10-11-12,
Inc. v. LMC Holding Co., 497 F.3d 1135, 1147 (10th Cir. 2007).  This Menards
did not do, instead waiting to seek a protective order until after the time for the
Rule 30(b)(6) deposition had passed and Mr. Deneke filed the instant motion to
compel.  The court does not condone Menards' tardiness, and it encourages
parties to seek protective orders in a timely fashion.

However, the court has wide discretion in ruling on a motion for a
protective order, and "only an abuse of that discretion would be cause for
reversal."  Gen. Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir.
1973).  In the interest of moving discovery in this case along, the court will
consider Menards' untimely motion for a protective order on its merits and will
consider each disputed matter in turn.

**1.    Applicable Standards**

Generally, "[i]nformation is discoverable only if it is relevant to the claims
or defenses of the case or, upon a showing of good cause, to the subject matter

16

of the case." <u>Murphy v. Kmart Corp.</u>, 255 F.R.D. 497, 501 (D.S.D. 2009) (citing FED. R. CIV. P. 26(b)(1) Advisory Committee's Note).  "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " <u>E.E.O.C. v. Woodmen of the World Life Ins. Soc'y</u>, No. 8:03CV165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (quoting <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978)).  Mr. Deneke, as the party seeking discovery, must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." <u>Woodmen of the World</u>, 2007 WL 1217919, at *1 (citing <u>Hofer v. Mack Trucks, Inc.</u>, 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe[,] with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." <u>Woodmen of the World</u>, 2007 WL 1217919, at *1 (citing <u>Cervantes v. Time, Inc.</u>, 464 F.2d 986, 994 (8th Cir. 1972)).

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." FED. R. CIV. P. 26(c)(1).  "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" <u>Id.</u>  The Eighth

Circuit has reasoned that the party seeking the protective order must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Gen. Dynamics Corp., 481 F.2d at 1212 (quotation omitted).

### 2.    MOE 12

This matter of examination asks Menards' corporate designee to testify about "Person(s) responsible at Rapid City Menards for compliance with OSHA regulations, training, certification of forklift operators, reporting of accidents, contacts or communications with regard to any accidents involving skid steers, fork lifts, or other machines classified as powered industrial equipment . . . used or employed in the outside loading yard of the Rapid City Menards." Docket No. 10-12 at p. 3.  In the first instance, Mr. Deneke argues this information is relevant because photographs from Menards' internal investigation showed the blocks Mr. Deneke purchased on wooden pallets of the kind moved by forklifts.  See Docket No. 10-4.  Mr. Deneke argues that this, together with the documented fact that he had purchased over 3,000 pounds of block, leads to the reasonable inference that a Menards employee did use or should have used a forklift or other piece of industrial equipment to load the block into Mr. Deneke's pickup.  Docket No. 20 at p. 10.  The complaint alleges that one Menards employee used a forklift to load the block. Docket No. 1-1 at p. 1.

Mr. Deneke has further alleged that "Menards failed to provide a reasonable number of trained employees to load the block and failed to warn of

the dangers he encountered on the premises." Docket No. 20 at p. 10.
Mr. Deneke has alleged that information about OSHA compliance is relevant
because the applicable standards concerning the operation of forklifts "includes
maintaining a work zone free of persons which can compromise safety." Id. at
p. 11. Based upon this showing, the court concludes that Mr. Deneke has
shown that information concerning OSHA compliance regarding forklifts and
other powered industrial equipment is relevant to his claim of negligence. The
court turns now to Menards' issues with this matter.

Menards asserts that records concerning the operation of a forklift or
other powered industrial machine are irrelevant because Mr. Deneke has not
alleged that he was injured due to a Menards' employee's operation of such a
machine and has not alleged that Menards failed to adequately operate its
forklifts. But Mr. Deneke has alleged that Menards failed to maintain a safe
premises for business invitees, and workplace safety incidents involving the
operation of forklifts and other machinery are reasonably likely to bear on the
issue of whether Menards knew the way it stored products in its loading area
created a foreseeable danger to people like Mr. Deneke. Accordingly, Menards
has not shown good cause why it should not prepare its designee to testify
about this matter.

However, Menards further objects on the basis of undue burden, arguing
that this matter is not limited as to time and, as written, would require all
information concerning OSHA compliance from the date its Rapid City store
opened until the date of the injury—a period of some 20 years. The court is

sympathetic to the burden this MOE would impose on Menards.  Accordingly, a protective order restricting the scope of this MOE to the five-year period preceding the injury—from September 2013 through September 2018—is warranted.

### 3.    MOE 16

This MOE asks Menards to prepare its designee to testify about the locations of video cameras at the Rapid City Menards on the date of the injury, whether any video images were captured showing the incident or the loading of Mr. Deneke's pickup, and whether any such media has been retained.  Docket No. 10-12 at p. 4.  In the course of the parties' correspondence, Menards stated that no video of Mr. Deneke's fall was captured.  Docket No. 10-9 at p. 7. Mr. Deneke has stated that it is presently unclear if the Rapid City Menards store had cameras which captured footage of the loading yard or if these cameras were monitored by staff in real time.  Docket No. 20 at p. 11. Mr. Deneke further asserts that the fact that Menards had cameras recording other parts of the store, but not the outside loading yard, "would suggest that the degree of care is compromised once customers have paid and are left to their own devices to pick up their purchased items."  Id. at p. 12.  Further, Mr. Deneke asserts that the real-time monitoring of surveillance footage would give Menards the opportunity to detect and address customers in need of assistance and dangerous conditions, which could show that Menards fell short of the duty it owed Mr. Deneke as an invitee.  Id. at p. 12.  Considering

these factors, the court finds that Mr. Deneke has shown that the locations of all surveillance cameras are relevant to his claim.

Menards objects on the basis that "[i]t is inconceivable that a camera located on the opposite side of a store the size of Menards has any relevance to Plaintiff's injuries." Docket No. 16 at p. 9. But just because Menards thinks Mr. Deneke does not need this information does not mean he cannot have it. See Sentis Grp., Inc. v. Shell Oil Co., 763 F.3d 919, 925 (8th Cir. 2014) (rejecting argument that one party "possess[es] the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case"). Accordingly, the relevancy objection is overruled.

Menards makes a separate, valid point that the disclosure of all locations of its surveillance cameras in its Rapid City store could create a security risk. Accordingly, the court will enter a protective order limiting the dissemination of this information and protecting it from unwanted disclosure.

**4.    MOE 18**

Mr. Deneke seeks to have Menards' corporate designee testify about other incidents that occurred in the outside loading yard of the Rapid City Menards, including injuries and property damage, from September 27, 2013, through September 27, 2018. Docket No. 10-12 at p. 4. Mr. Deneke asserts this information is relevant to his claim because evidence of other accidents and injuries in this location could show the existence of particular dangers. Such evidence, Mr. Deneke asserts, could show Menards was aware of a dangerous circumstance in that area but took no action to remedy it. Docket

21

No. 20 at p. 14.  The court agrees, and Mr. Deneke has made the threshold showing of relevance.

Menards objects on the basis that the cost of preparing its designee to testify about five years of incidents is overly burdensome and expensive, and instead asks the court to restrict the time period to three years.  Docket No. 16 at p. 10.  The court disagrees.  Menards has not shown that the extra expense associated with reviewing two additional years' worth of incidents outweighs the relevance of that information.  A party cannot avoid complying with a discovery request just because it would be expensive or burdensome.  See Cont'l Ill. Nat'l Bank & Trust Co. of Chi., 136 F.R.D. at 684-85 ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").  Menards has not shown that the addition of two years of records is extraordinarily expensive such that the burden outweighs the relevance.  Therefore, Menards' motion for a protective order as to this MOE is denied.

**5.    MOE 19**

This MOE requests that Menards' representative be prepared to testify about "Protocols, procedures, rules, methods, practice for handling, discarding, storage, stockpiling, and warehousing of pallets."  Docket No. 10-12 at p. 4.  Mr. Deneke asserts this information is relevant to the issues in this case because he tripped and fell over a pallet in the outside loading area at the Rapid City Menards location.  The court agrees.  Menards' practices concerning

22

pallets at its Rapid City location are relevant to whether the pallet Mr. Deneke tripped over created a foreseeable danger to invitees. Additionally, information concerning pallet practices *at other locations* may be relevant to the issue of whether the Rapid City location's practices were deficient compared to other Menards stores. This is true even though Mr. Deneke's complaint does not allege that the pallet he tripped over was improperly placed. In fact, Mr. Deneke could not know whether the pallet was improperly placed without the opportunity to examine Menards' representative on the topic of proper pallet practices.

Menards objects on the basis that this MOE seeks a commercial and/or trade secret because the procedures, if disclosed, could benefit a competitor. Docket No. 16 at p. 11. Menards cites the declaration of Darrik Johnson at paragraph 9 to support this argument. Paragraph 9, in turn, concerns "safety and training records," not practices or procedures. Docket No. 17 at p. 2. The pallet policy cannot reasonably be construed as a *record* documenting safety or training, and Mr. Johnson's affidavit is inapplicable. Therefore, Menards has not made the "specific demonstration of fact" necessary to secure a protective order. Gen. Dynamics Corp., 481 F.2d at 1212. Menards' request for a protective order as to this MOE is denied.

### 6. Electronically Stored Information

Menards seeks a protective order concerning all seven areas Mr. Deneke wishes to explore concerning its storage of electronic information. Docket No. 16 at pp. 11-12. Menards asserts these matters amount to a fishing

expedition because Mr. Deneke has not shown how they are relevant to his claims.  The court agrees.

While some courts have permitted the discovery of information concerning database and storage architecture, the party seeking such discovery must still make a showing of relevance.  See, e.g., Leibholz v. Hariri, Civil Action No. 05-5148 (DRD), 2008 WL 2697336, at *2, 4 (D.N.J. June 30, 2008) (allowing discovery of database information where document at issue was alleged to be fabricated).  While the court agrees with Mr. Deneke that "[ESI] has become an extension of how business is done," Docket No. 20 at p. 20, the fact remains that he has raised no ESI-storage issues in this case.  To be clear, Mr. Deneke may inquire about document storage and retention topics, but only those relevant to his claims.  See In re Jemsek Clinic, P.A., No. 06-31766, 2013 WL 3994666, at *7 (Bankr. W.D.N.C. Aug. 2, 2013).  But, as of this writing, Mr. Deneke has not raised any spoliation or other ESI issues.

Several courts have found that ESI storage and retention discovery is improper when the requesting party has made no showing that spoliation is an issue.  See, e.g., Cableview Comm'n of Jacksonville, Inc. v. Time Warner Cable Se., LLC, No. 3:13-cv-306-J-34JRK, 2015 WL 12838175, at *6 (M.D. Fla. May 4, 2015) (finding the "discoverability of document retention policies hinges upon whether spoliation is actually at issue"); In re Jemsek Clinic, P.A., 2013 WL 3994666, at *9 (citing cases and concluding "[v]arious courts have held that such non-merits-based discovery is improper when the requesting party has not made a threshold showing that spoliation has actually occurred");

24

Martin v. Allstate Ins. Co., 292 F.R.D. 361, 364 (N.D. Tex. 2013) (finding deposition inquiries about document retention policy were overbroad and irrelevant where requesting party merely speculated that requested documents had been withheld).  Because spoliation has not been raised as an issue in this case, the court sees no reason why Menards should have to prepare its representative to field questions about the ESI issues at the 30(b)(6) deposition. If, at some future time, a document retention issue arises related to Mr. Deneke's claim, he may bring a motion to compel document retention polices.  Therefore, Menards' motion for a protective order as to the ESI topics is granted.

### 7.   SOD 1

This request seeks "Photographs, surveillance videos, video recordings, investigation reports, statements, diagrams, reports of investigations or memoranda relating to reports of accidents, falls, slips, or injuries claimed to have occurred in [the] loading yard at the Menards in Rapid City on and before September 27, 2018 to include the accident which is the subject of this action." Docket No. 10-12 at p. 6.  Menards objects to this document request on the basis that the scope of the request is overbroad and would capture irrelevant documents because the request is not limited in time.  Docket No. 16 at pp. 12-13.  The request as written would, Menards represents, capture documents going back to the opening of the Rapid City Menards location, some 20 years before Mr. Deneke's injury.  The court finds that the expense and burden of locating documents responsive to this request with no time

25

limitation, <u>see</u> Docket No. 17 at p. 2, ¶ 12 (responding fully would require reviewing thousands of pages of documents), outweighs their likely relevance. Accordingly, the court will impose a time limitation on this request. Menards shall produce documents responsive to this request relating to incidents in the five years preceding Mr. Deneke's injury.

**8.    SOD 7**

Document request seven asks Menards to produce "A list of all Rapid City Menards employees available to assist Plaintiff on September 27, 2018, when he presented to the loading yard at Menards to pick up the capstone block materials he had purchased." Docket No. 10-12 at p. 6. As for threshold relevance, Mr. Deneke asserts in his complaint that Menards employees were unavailable to assist customers with loading merchandise and that, due to the lack of store personnel, Mr. Deneke had to assist a forklift operator and load the block himself. Docket No. 1-1 at p. 2. Therefore, Mr. Deneke has made a threshold showing of relevance as to the store personnel who could have, but did not, assist him. <u>Woodmen of the World</u>, 2007 WL 1217919, at *1.

Menards asserts this request is overbroad and would impose an undue burden because it would require it to locate its employees' timecards and the schedule from September 27, 2018, then locate each employee's last known contact information to reach them about what they were doing at around 11:45 a.m. on September 27, 2018, to ascertain if they were available to assist Mr. Deneke. Docket No. 16 at p. 13. Menards cites Mr. Johnson's declaration in support of these representations. But Mr. Johnson's declaration

misrepresents the actual burden Menards would suffer by complying with this request.

First, Mr. Johnson is confusingly oblique about Menards' need to contact employees who "may have been working that day." Docket No. 17 at p. 3, ¶ 13. It strains credulity that a corporation of Menards' size and sophistication cannot identify precisely which employees were working at 11:45 a.m. on September 27, 2018, at its Rapid City store.

Second, Mr. Johnson points to an unhelpful figure to show the overburden of this document request. He avers, "[o]n average, during this timeframe, the Rapid City Menards store employed 243 persons in various positions, all of whom could have assisted Mr. Deneke." Id. at ¶ 14. The court is left speculating about what this means. Did 243 employees work at the Rapid City Menards on September 27, 2018? Is this the total number of employees the store employed at that time? The only number of employees that matters is this: employees of the Rapid City Menards who were working at around 11:45 a.m. on September 27, 2018. This would not include employees whose shifts did not begin until, for example, 2:00 p.m. on September 27, 2018. Nor would it include employees whose shifts ended at, for example, 10:00 a.m. that day. Menards has not provided this number.

Without an accurate indication of the burden and expense to Menards occasioned by this request, the court has no choice but to deny its request for a protective order. See Gen. Dynamics Corp., 481 F.2d at 1212 (the party seeking the protective order must make "a particular and specific

27

demonstration of fact, as distinguished from stereotyped and conclusory statements").

**9.   SOD 12**

This request seeks "A list of all employees of the Rapid City Menards during the period of April 1, 2018 through September 27, 2018, who had been engaged or responsible for assisting customers in loading of materials purchased for pickup in the loading yard." Docket No. 10-12 at p. 7. Mr. Deneke asserts this list, which would be much more voluminous than the list requested in SOD 7, is still relevant because "[t]he number of employees available to assist customers goes to the very heart of why self-service loading yards can present a danger to invitees." Docket No. 20 at p. 17. "If no employees were available," Mr. Deneke argues, "that fact would suggest a total lack of attention paid to an area where customers roamed at will to search for their purchases." Id. The court finds Mr. Deneke has made a threshold showing of relevance as to this information; a perennial dearth of employees assisting customers in the loading area may be evidence that Menards created a dangerous condition for invitees by requiring them to load their own heavy merchandise on Menards' premises.

Menards objects to this request on the basis that it imposes an extraordinary burden and expense. It asserts that it would need to contact every person employed by the Rapid City Menards in that six-month span to determine whether they assisted patrons in the loading area. Docket No. 17 at p. 3, ¶15. This task would indeed be extraordinarily burdensome and would

create a significant expense for Menards. And the potential relevance of this information to Mr. Deneke does not justify this expense.

However, it is unclear if attempting to call every person employed by the Rapid City Menards during April–September 2018 is the only way to create the list requested. Mr. Johnson has not indicated whether, for instance, records of Rapid City Menards employees may be sorted by department (e.g., cashiers, flooring, paint, cart corral) such that he could pare the pool of responsive employees down to a more manageable size. Accordingly, Menards' motion for a protective order is granted as to this SOD for purposes of the documents requested ahead of the Rule 30(b)(6) deposition, but it is directed to prepare its corporate designee to answer questions at the Rule 30(b)(6) deposition about (1) how records of the employees at its Rapid City store may be sorted and (2) whether there is a more efficient way to identify those employees who, in the six months preceding Mr. Deneke's injury, assisted customers in the loading yard with loading merchandise.

### 10.   SOD 14

Request 14 asks for the personnel files of the employees identified in request 13, which in turn asks for a list of all Menards personnel who saw, recorded, or observed any of the events leading up to Mr. Deneke's injury. Docket No. 10-12 at p. 7. Menards indicates it has identified two employees who interacted with Mr. Deneke on the day of his injury. Docket No. 16 at p. 14. But it asserts that it should not be required to produce their personnel files because they are irrelevant to Mr. Deneke's injury. Id.

Mr. Deneke asserts the personnel files are relevant because they might include corrective or punitive actions against the individuals for failure to comply with safety rules or policies. Docket No. 20 at p. 18. He further asserts any criminal histories involving offenses bearing on credibility may become relevant for impeachment purposes. Id.

But a non-party's personnel file is not discoverable simply because they might be a witness in a case. Raddatz v. Standard Register Co., 177 F.R.D. 446, 448 (D. Minn. 1997) (citing Haselhorst v. Wal-Mart Stores, Inc., 163 F.R.D. 10, 11 (D. Kan. 1995)). Additionally, personnel files need not be produced in their entirety when the relevant information can be obtained through less intrusive means. Id. (citing Sanchez v. City of Santa Ana, 936 F.2d 1027, 1034 (9th Cir. 1990), cert. denied, 502 U.S. 957 (1991)).

With these considerations in mind, the court grants Menards' request for a protective order in part. In response to this document request, Menards shall produce from the two employees' personnel files any reports, citations, or records of corrective or punitive actions related to failure to comply with safety rules or policies. The criminal histories of these employees are not, at this juncture, relevant to the claims and issues in this case. Menards is instructed to use redaction to remove sensitive information from the documents it produces in response to this request.

## 11.  SOD 15

This request seeks copies of the "[p]olicies, procedures, methods or internal processes for conducting background checks of applicants for

employment relative to their criminal history and ability to perform the functions and tasks of the position for which they have applied." Docket No. 10-12 at p. 7.  Mr. Deneke illustrates how he believes this information would be relevant by way of example.  Docket No. 20 at p. 18.  "[I]f Menards did not have a policy to check an applicant's representation that he had been certified to operate a forklift and it was later discovered that in fact, he had never been certified, such information might lend itself to a relevant inquiry if the same employee had been involved in an accident in the loading yard involving the operation of that equipment."  Id.

This falls short of the required threshold showing of relevance.  The possible application of these documents to the issues in this case is too speculative to justify requiring Menards to produce them.  Whether or not an applicant for employment at Menards was certified to operate a forklift *before* their employment is far less relevant than whether they were certified at the time of Mr. Deneke's—or another—injury.  Nor has there been a claim that Menards' negligent hiring caused Mr. Deneke's injury.  This document request is a fishing expedition that has minimal relevance to the issues in this case. See Murphy, 255 F.R.D. at 501.  Accordingly, Menards' motion for a protective order as to this SOD is granted.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is hereby

ORDERED that the motion to compel [Docket No. 7] filed by plaintiff LeRoy Deneke is granted in part and denied in part.  Plaintiff's motion for a

protective order prohibiting the taking of his deposition before the Rule 30(b)(6)
deposition is denied.  Plaintiff's motion for sanctions is granted as to costs, but
not attorneys' fees, he incurred related to the missed deposition.

ORDERED that the cross motion for a protective order and to compel
[Docket No. 15] filed by defendant Menard, Inc., is granted in part and denied
in part.  The motion for a protective order is granted as to MOE 12 (as
narrowed), the ESI topics, SOD 1 (as narrowed), SOD 12 (as narrowed), SOD 14
(as narrowed), and SOD 15.  The motion for a protective order is denied as to
MOE 16, MOE 18, MOE 19, and SOD 7.

ORDERED that defendant Menard, Inc., shall be responsible for
reasonable costs incurred by plaintiff LeRoy Deneke for missing the properly
noticed Rule 30(b)(6) deposition.  Mr. Deneke shall file a motion and affidavit
with proof of service setting forth the costs, but not attorneys' fees, he incurred
in connection with the missed deposition within 28 days of this order.
Menards shall file any and all objections to the allowance of costs within 14
days after receipt of service of Mr. Deneke's motion and affidavit.  Menards
may, by counter affidavit, controvert any of the factual matters contained in
Mr. Deneke's motion and may assert any factual matters bearing on the award
of attorneys' fees.  D.S.D. LR 54.1(C).  It is further

ORDERED that the parties have until July 22, 2022, to arrive at
mutually agreeable terms for a protective order for MOE 16 and to submit the
same to the court in the form of a proposed order.  If the parties fail to agree

upon the terms of a protective order relative to MOE 16 by July 22, the court will impose its own order.

DATED June 22, 2022.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge